# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| MARK A. WARD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:10CV760 |
| ) | |
| TERRY M. BENNETT, et al., ) | |
| ) | |
| Defendant(s). ) | |

## ORDER AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, a frequent pro se litigant with a lengthy history of bringing meritless or frivolous litigation in federal court, has filed a pro se civil complaint. With that complaint, Plaintiff also submitted an Application for Leave to Proceed In Forma Pauperis. "The federal *in forma pauperis* statute, first enacted in 1892 [and now codified at 28 U.S.C. § 1915], is intended to guarantee that no citizen shall be denied access to the courts 'solely because his poverty makes it impossible for him to pay or secure the costs.'" *Nasim v. Warden, Md. House of Correction*, 64 F.3d 951, 953 (4th Cir. 1995) (quoting *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 342 (1948)). "Dispensing with filing fees, however, [is] not without its problems. Parties proceeding under the statute d[o] not face the same financial constraints as ordinary litigants. In particular, litigants suing *in forma pauperis* d[o] not need to balance the prospects of successfully obtaining relief against the

administrative costs of bringing suit." *Nagy v. Federal Med. Ctr. Butner*, 376 F.3d 252, 255 (4th Cir. 2004).

To address this concern, the in forma pauperis statute provides that "the court shall dismiss the case at any time if the court determines that – . . . (B) the action or appeal – (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2).

As to the first of these grounds for dismissal, the United States Supreme Court has explained that "a complaint, containing as it does both factual allegations and legal conclusions, is frivolous where it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). "The word 'frivolous' is inherently elastic and not susceptible to categorical definition. . . . The term's capaciousness directs lower courts to conduct a flexible analysis, in light of the totality of the circumstances, of all factors bearing upon the frivolity of a claim." *Nagy,* 376 F.3d at 256-57 (some internal quotation marks omitted).

The Supreme Court further has identified factually frivolous complaints as ones involving "allegations that are fanciful, fantastic, and delusional. As those words suggest, a finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992) (internal

citations and quotation marks omitted). In making such findings, this Court may "apply common sense." *Nasim,* 64 F.3d at 954.

Alternatively, a plaintiff "fails to state a claim on which relief may be granted," 28 U.S.C. § 1915(e)(2)(B)(ii), when the complaint does not "contain sufficient *factual matter*, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. ___, ___, 129 S. Ct. 1937, 1949 (2009) (emphasis added) (internal citations omitted) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* In other words, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice." *Id.*[1] Also, the Court may anticipate affirmative defenses which are clear on the face of the complaint. *Todd v. Baskerville*, 712 F.2d 70 (4th Cir. 1983); *Nasim*, 64 F.3d at 954 (court may apply common sense and reject fantastic allegations and/or rebut them with judicially noticed facts).

For the reasons that follow, the complaint should be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) because it is frivolous and because it fails to state a claim on which relief may be granted.

Plaintiff, who is black, alleges that he was a tenant at 170 Summit Street, #21, in Rural Hall, North Carolina, from October 2004 until October 2008. This residence was apparently a townhome in the Buckeye Townhome complex. It was owned by Plaintiff's landlord, Glenda Hill. Plaintiff states that, beginning in 2005, other Buckeye Townhome residents, who were apparently all white, "engaged in sports activity (ballgames, rock throwing, golf)

---

[1] Although the Supreme Court has reiterated that "[a] document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal citations and quotation marks omitted), the United States Court of Appeals for the Fourth Circuit has "not read *Erickson* to undermine *Twombly*'s requirement that a pleading contain more than labels and conclusions," *Giarratano v. Johnson*, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (internal quotation marks omitted) (applying *Twombly* standard in dismissing pro se complaint). *Accord Atherton v. District of Columbia Off. of Mayor*, 567 F.3d 672, 681-82 (D.C. Cir. 2009) ("A *pro se* complaint . . . 'must be held to less stringent standards than formal pleadings drafted by lawyers.' But even a *pro se* complainant must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.'" (quoting *Erickson*, 551 U.S. at 94, and *Iqbal*, 129 S. Ct. at 1950, respectively)), *cert. denied* ___ U.S. ___, No. 09-8739, 2010 WL 286406 (2010), *and cert. denied*, ___ U.S. ___, No. 09-889, 2010 WL 285700 (2010).

in and around the complex parking lot, threatening plaintiff's property in the residential parking lot." (Docket No. 2, Complaint, ¶ 10.) Some of these persons were tenants of townhomes which were owned and/or managed by Defendant Jett Properties, LLC. (*Id*.)

Plaintiff determined that the sports activity of the other residents violated his "right to quiet enjoyment" of his property which was guaranteed under North Carolina law as set out in N.C. Gen. Stat § 42-59.1. A review of that statute reveals that it "recognizes that the residents of this State have a right to the peaceful, safe, and quiet enjoyment of their homes." However, it then goes on to state that "these rights, as well as the health, safety, and welfare of residents, are often jeopardized by the criminal activity of other residents of rented residential property, but that landlords are often unable to remove those residents engaged in criminal activity." In order to protect the rights it recognizes, the provisions "of this Article" apply to all residential rental agreements in the State. Of course, to determine the scope of the "recognition" of the "right to quiet enjoyment" and any rights or remedies it may provide, the other statutory sections of the "Article" must be examined. Such an examination is telling.

Initially, it must be noted that the "Article" referred to by the statute is entitled "Expedited Eviction of Drug Traffickers and Other Criminals." The definitions section of the Article also speaks in terms of criminal activity, not general nuisances and annoyances. N.C. Gen. Stat. § 42-59. Subsequent sections allow landlords (not other tenants) to bring actions to remove tenants based on the criminal activity of the tenants, their guests, and

members of their households. N.C. Gen. Stat. §§ 42-60 to 42-76. In all instances, it is clear that these statutes are aimed at allowing landlords to easily evict tenants engaged in drug dealing and other criminal activity. They in no way create a general "right to quiet enjoyment" enforceable by nearby tenants.

There is also a common law right to quiet enjoyment recognized under North Carolina law. However, that right extends to tenants and gives them the right not to have their use of their leased premises so disturbed by their landlord or persons under the landlord's control that they are constructively evicted without process. It "'does not extend to the acts of trespassers and wrongdoers.'" *Charlotte Eastland Mall, LLC v. Sole Survivor, Inc.*, 166 N.C. App. 659, 608 S.E.2d 70, 72 (2004)(quoting *Huggins v. Waters*, 167 N.C. 197, 198, 83 S.E. 334, 334 (1914)). Therefore, it also would not cover a situation where, as here, a tenant is annoyed by tenants not under his landlord's control.

In any event, Plaintiff, having convinced himself that the North Carolina drug trafficking and criminal activity eviction statutes created for him a right that was being violated by his neighbors' parking lot sports activities, "attempted to enforce his right to quiet enjoyment by verbal and written requests to [Defendants] Buckeye and Jett to address their resident's [sic] and tenant's [sic] unlawful conduct." (Docket No. 2, ¶ 12.) Plaintiff alleges that Jett and Buckeye retaliated against his attempt to enforce his nonexistent statutory right by "launch[ing] a racially charged campaign to have plaintiff evicted from his home by communicating false representations about plaintiff's enforcement attempts of his rights to

plaintiff's landlord, Glenda Hill." (*Id.* ¶ 13.) Hill, in November of 2007, told Plaintiff to "'go along with the program or there would be consequences.'" (*Id.* ¶ 14.)

Plaintiff persisted in pursuing what he believed were his statutory rights. On May 17, 2008, he wrote a letter to one of Jett's tenants asking that the tenant not infringe his right to quiet enjoyment. (*Id.* ¶ 15.) A few days later, Hill allegedly told her sister and Plaintiff's fellow tenant in Unit # 21, Brenda Ensley, that Jett threatened to sue her if she did not sell her property to it so that it could evict Plaintiff. (*Id.* ¶ 16.) Then, on May 30, 2008, Hill did begin proceedings to force Plaintiff out of the premises. (*Id.* ¶ 17.) Plaintiff alleges that Jett also targeted his residence for purchase out of 17 units not for sale in the complex. (*Id.* ¶ 18.) Ensley attempted to buy the townhome from Hill herself, but was rebuffed, allegedly because Plaintiff would still be living there. (*Id.* ¶ 22.) Plaintiff states that after further meetings and proceedings, he was evicted from his residence.[2] (*Id.* ¶ 26.) Hill retained ownership of the property and later placed a "for rent" sign outside it. (*Id.* ¶ 27.)

Plaintiff has brought a complaint against Jett Properties, its owners and managers Terry M. Bennett and Eddie Gordy, the Buckeye Homeowner's Association, and Buckeye's officers Rickie Speer and Sabrina Coone. Plaintiff alleges in his complaint that Defendants' actions in seeing that he was evicted him were based on racial discrimination. He claims that

---

[2] An exhibit attached to the complaint and intended to illustrate this point actually shows only that Ensley was evicted. Plaintiff is not mentioned in the document. (Docket No. 2, Ex. A.)

this violated the Fair Housing Act, 42 U.S.C. § 3617. Plaintiff seeks an injunction, as well as compensatory and punitive damages.

It is true that the Fair Housing Act prohibits racial discrimination in rental housing. However, beyond the fact that the complaint alleges that the tenants who engaged in parking lot sporting activities and Ensley[3] are white, while Plaintiff is black, Plaintiff has given no facts to suggest that racial discrimination occurred. The mere allegation that the parties involved in this dispute between tenants were of different races is not sufficient to state a claim for racial discrimination. *See generally*, *Francis v. Giacomelli*, 588 F.3d 186, 195 (4th Cir. 2009)(allegations that parties are of different races and that other members of the same race as defendants were not subject to mistreatment were insufficient, standing alone, to state a discrimination claim).

In fact, the complaint actually reveals that Plaintiff mistakenly believed he had a state law statutory right that did not exist. He then tried to rely on the nonexistent right to stop what he regarded as nuisance activities. When his attempts to enforce the nonexistent right led to problems with the townhome management and other tenants, Plaintiff was eventually evicted through legal process in the state courts. No facts in the complaint, as opposed to Plaintiff's conclusory statements, suggest that his race was in any way a motivating factor. In fact, they suggest a routine dispute between one tenant (Plaintiff) and other tenants, the

---

[3] Neither Ensley nor the tenants are parties to the case.

other tenants' landlord, and Plaintiff's own landlord which led to Plaintiff's eviction. Plaintiff's conclusory statements that race was involved are nothing more than the type of "the-defendant-unlawfully-harmed-me" accusations that do not state a claim for relief. This is particularly true where, as here, the complaint actually points to an "'obvious alternative explanation' for the [actions of the defendants] and the purposeful, invidious discrimination [Plaintiff] asks [the Court] to infer, discrimination is not a plausible conclusion." *Ashcroft*, 129 S.Ct. at 1951-52 (quoting *Twombly*, 550 U.S. at 567).

Summed up, the complaint reveals that Plaintiff disliked the actions of some fellow tenants, attempted to combat those actions using misinterpretations of state law, created a dispute that he lost, and is now attempting to inflate a simple property dispute into a federal discrimination case without any factual foundation for doing so. He has not stated any proper claim for relief and his filing, as has often been true of his past litigation, can properly be described as frivolous. It should be dismissed for those reasons.

Plaintiff is therefore not entitled to further proceed as a pauper. Plaintiff's request to proceed *in forma pauperis* should not be countenanced, with the exception that *in forma pauperis* status shall be granted for the sole purpose of entering this Order and Recommendation.

**IT IS THEREFORE ORDERED** that *in forma pauperis* status be granted for the sole purpose of entering this Order and Recommendation.

**IT IS RECOMMENDED** that this action be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) for being frivolous or malicious and for failing to state a claim upon which relief may be granted.

                                          /s/ P. Trevor Sharp
                                      United States Magistrate Judge

Date:   October 27, 2010